We have one case this morning. It's number 19-126. Can we Google Mr. Schmidt? Thank you, Your Honor. May it please the Court. Google's petition for mandamus presents the question whether a computer sitting on a shelf in a third party's facility in the Eastern District of Texas is a regular and established place of business for purposes of patent venue We talked for a moment about whether a regular and established place of business requires a person to be there because in 1897, of course, the service of process statute was also enacted and that appears to assume that there'd be an employee or agent at the place of business. So that's the case. So where does that lead us? I mean, does that mean that you can't have a robotic equivalent of a person? The ATM machine, for example, or the virtual grocery store? Yes, they wouldn't qualify as a person for service of process because the whole notice purpose of service on a machine. But what about for venue purposes? Is the robotic equivalent of a person within the venue statute or not? Our position is that a purely robotic equivalent would not be sufficient and otherwise you have to look at the text of the statute. An ATM machine would not be sufficient. Well, an ATM machine is a slightly different circumstance because there you would potentially have employees or agents present servicing the machine and we think that's a presence from an employee, which is to say, regular, recurring, steady, as this court said in Prey. Not necessarily an employee. It doesn't necessarily have to be an employee. The language is agent, so it doesn't have to be directly employed by the defendant, but there does have to be somebody regularly there. In other words, you could imagine a non-robotic situation like, say, a laundromat, which is a self-service kind of a store where there's not employees present who are carrying out the business of cleaning one's laundry. It's a self-service facility, but there will be employees there who are running the store, who are servicing the machines and doing things like that. Or agents is your problem because here the host on behalf of Google is servicing the machines, so why wouldn't that fit within your definition? So, Your Honor, first of all, there's never been a claim in this case made that the employees of the ISP are Google's agents, so we think that is pretty clearly waived in this case. But moving on from that, if you look at the Suddenlink agreement itself... Right, the agreement is not dispositive as to agency. We've said that in the PG&E case. The restatement says that, so let's put that aside. Okay, so the label's not dispositive, but it does disclaim an agency relationship. And if you look at schedule... The ISP is basically, right, answering the door of those customers who would like to get the perfectly good business reasons on this server, taking the request to the server through equipment that it is required by the agreement to maintain, and then sending the requested information to the customer. Why is that not acting as an agent for Google's business of supplying content from that server at that space, I guess, is the word the agreement uses. Not just equipment, but space. So the question we think is whether the people who are there carrying out the ISP's business count as Google's agent, not whether the computers, in some sense, count as an agent, because after all, a computer is just a machine, and we don't think that qualifies as a place of business under the statute. Supposing it was an entire server farm. Excuse me? Supposing it was an entire server farm, would that change your position? Yes, absolutely. For an entire server farm, then we would own potentially the real property underlying that farm. There would be employees there servicing the machines. That would be a very different circumstance. Okay, let me take you into the future. Supposing that server farm was incorporeal. That is, that all the computations that are done are done with life, without machinery, and yet it functions as a server farm. Does that change your position? No, Your Honor. Our position is still that you need, our position is that you need an employee present, right? So to the extent the server farm were 100% automated, we are way in the future. This were pure robotics. There would not be an employee. And it's served by pure robotics. Served by pure robotics. You have to apply the language of the statute, and this Court has said that again and again. As enacted in 1897, the statute said, to the extent venue is grounded on a regular and established place of business, you can serve the agent conducting such business. And we think that's the text, and it requires an employee or agent present. Suppose the employee or agent is present, that there's a physical place of business, but all that the employees do is service equipment. Is that sufficient? Is that a regular established place of business? You might get into some nice questions about what regularly carrying out the employee's business is. We are getting into nice questions, but... Our position is that as long as that employee is regularly there, carrying out some piece of the business, that is enough. And some piece of the business... Servicing equipment is enough. Yes. It could be in some circumstance. Servicing the equipment is enough. Just like in the laundromat, you would have a place of business, even though those employees are not carrying out the business in the sense of doing the laundry, but servicing the machines. So that's enough. To get back to Judge Toronto's question about why these human agents at the ISP facilities are not agents as contemplated by the statute, again, I think looking to the details of the agreement is helpful. Obviously, again, we think this is way if nobody's ever claimed that they're agents, the court can leave this question of what kind of agency relationship suffices for another day. Or if we thought it was relevant, we could deny mandamus with instructions to further consider the venue question in light of exploration of facts not fully explored. That's one conceivable basis. Yes. One conceivable disposition would be to say, this is the legal framework. You need real property present and you need agents. Now, we think the real property point is dispositive. It's on its own. So we don't think remand is necessary. There is real property. I mean, there's a building. Well, the ISP is real property, but it's not Google's real property. So what? Well, the three cray factors are you need a physical place of business, needs to be regular and established. And the last one, it needs to be of the defendant. So they leased part of the building, right? I don't think that's a fair characterization. I would suppose it is a fair characterization. Where does that leave you? If they leased a room to have the servers, that would be sufficient? Yes. That's your server firm. A room in a building is sufficient. So if we focus on the text of the statute, the text is a place of business. In Cray, this court said a place of business is a building or part of a building set aside for a purpose or quarters out of which business is conducted. Let me take you the other way, which I'm going to ask your friend on the other side. And that is, instead of that one box or you have that one box, but instead of Google using it, three small companies are sharing it. And they don't even know they're sharing it. Where does that put us? I think that's exactly the point, Your Honor. And we wouldn't know whose place of business that is. And we think it would be absurd to claim that three companies are operating a place of business out of a single box. And honestly, this case is not that far from there. If you look at the photographs of the rooms with the servers, there are hundreds upon hundreds of servers and shelf after shelf after shelf. And if Respondent's theory is correct, presumably each one of those servers could conceivably be a place of business. And you have hundreds of places of business operating out of that single room. Can I explore this lease question a little bit? So I guess I was thinking of a farmer's market or a flea market. And let's say it's not just every Sunday, it's every other day. Make it every day. I don't think it matters. And the stamp seller or the bagel seller has an agreement with whoever is hosting it that I'm going to get this stall. And maybe even it's not a binding contract. But year in and year out, the bagel seller or the stamp seller is at that place. No lease. Is that not still a regular and established place of business? We think that would probably fit within the language of Cray. And the reason for that is it's ultimately a kind of real property. It's an area of land. In other words, it's a reserve space where people can stand and carry out the business of the defendant. In other words, one piece of relevance of the service statute is that we think it requires agents present. Another piece of it is that it shows the type of place that Congress had in mind. If there was a specific shelf that they contracted to have their servers on in a particular room, that would be sufficient. And the problem here is that there's no specificity about where the server is. No, we would disagree with that, Your Honor. We don't think a shelf is a part of a building in the sense that this court used that phrase in Cray. We think- From a table at a flea market? Yes, because a table at a flea market, again, is going to be generally speaking an area around which people can congregate and interact with customers. A shelf is just a shelf holding a piece of equipment. And we think when the court used the phrase building or part of a building, it essentially meant something that functions like a room. You want to distinguish between fixtures and non-fixtures? We don't want to get into the minutiae of state real property law. We use the phrase property in its somewhat colloquial sense, which is to say it needs to be a building or a part of a building set aside. So we don't think a light switch or a fixture, as Your Honor said, would technically qualify as a place of business, even though it's within a building. We think in this instance, you have to be, you have to, to borrow Justice Scalia's words in the Radlach's opinion for the court, we shouldn't be hyper-literal and antithetical to common sense. We've got to bring some common sense to bear to us. But why isn't it common sense? Google stores a massive amount of wares that consumers want at a particular spot regularly and people get it from that spot. The fact that it is extremely small and doesn't require a physical hand attached to a body with physical feet standing near it to get it, why should that matter? Because we think the language is clear, a regular and established place of business. I mean, it may be that this equipment, we don't think on the facts of this case it is, as is exemplified by the fact that these machines have been taken offline. The fact that this might be important to delivering content to customers is not going to be dispositive because it's just equipment that carries it out. It's not that place of business. So a cell tower to a cell ISP is connecting the various wires and I think, I don't know, Section 7 or 4 or something of the agreement specifically requires the crucial things that the ISP has to do is to supply connections both up to Google so that Google can keep storing stuff on it and connections to anybody basically on the internet who wants to get it. That's right, Your Honor. The ISP has to plug it in but we don't think that changes it from fundamentally being a piece of equipment to being a place of business. It's still just a piece of equipment like a cable box sitting in your home. After all, a user in one's home has to plug a cable box into the wall for it to operate but the cable company owns the cable box and just by virtue of that little activity, it doesn't convert a cable box in someone's home into a place of business. So you still have this requirement of a regular and established place. What are the implications for the government's various trade positions relating to non-physical trade property that is intellectual property, insurance and so on where there's no physical export of goods from the United States and yet it's considered highly important? So we're just asking the court to interpret this phrase regular and established place of business in the context of this very particular law which, as the Supreme Court has said, was passed for a specific purpose as a restrictive measure to narrow or limit a patent venue and in the context in juxtaposition with the service statute. So we don't think the unique statutory context of this law will necessarily have big ramifications for other circumstances. So we don't think the court should be concerned about that. But getting back to this shelf point, Your Honor, I think there are two fundamental points. The first is that a shelf is not a building. A shelf is not a regular and established place of business in the way that that phrase was used in Cray. And we can see that both from the phrase place of business and the way that Cray defined that phrase. We can see it when we broaden the lens and look at the phrase regular and established place of business. The word established suggests, again, real property, something more than just a fixture in a building. That doesn't seem to me to be a very satisfactory way of analyzing it. And to a large extent, it's what they meant in 1897 about what constitutes conducting a business. And it looks as though dealing with customers would be conducting a business. It looks as though they contemplated that having a manufacturing facility would be conducting a business. What else might be conducting a business isn't so clear. And the dictionary definitions of the time don't really provide much help. I mean, do you think, for example, in 1897, they contemplated if a railroad track ran through a state and there were no stations or no physical offices and that the only workers of the railroad who appeared in the state were doing track maintenance, would that be having an established place of business in the contemplation of the 1897 statute? Absolutely not, Your Honor. I mean, we would say that a railroad track running through a state is just the railroad's equipment. It's what allows the railroad to operate. But it's not a place of business as that phrase was understood. That's what? They're not dealing with customers? They're not selling things to customers within the state? It's a number of factors. So you're not going to have regularly folks there servicing the equipment. Does the railroad have a real property interest? It would, probably. It'll have an easement or something like that. So that just goes to show you that having real property is not a sufficient condition. We think it's a necessary condition, though. But we think you have to look at is this a regular and is this a building or a structure from which business is carried out? But what does business mean? That's what I'm asking you about. The place can be satisfied by leasing real property, but what kind of business has to be conducted using that real property to come within the statute? So, Your Honor, as you pointed out, obviously interacting with customers is going to be business. Carrying out an analog business is going to be business. And we don't think that necessarily excluded from the statute. What we do think is excluded is digital business on its own. In other words, digital business per se. And that's just because of Cray. I'm not sure what that means. So Cray said you cannot just have a virtual space. That's all we mean by that. A computer, to the extent you want. I wasn't even sure quite what that means. Of course, virtual space is not physical space. There is a physical space at the Cable 1 facility and the Suddenlink facility. Some business is being conducted from that space called the space in the agreements. Why isn't it Google's? So, Your Honor, we think it's virtual space. So let me analogize this. No, it's real space. You can walk on it. So it's real space in the sense that you have equipment there. But to the extent business is being carried on, it's occurring in cyberspace. It's virtual. Let me try and make this a little clearer. That's just, I mean, I don't understand those words. Yeah. There is physical space with a physical piece of equipment on it. Business is being conducted out of the machine at that physical space. And it's there in order to save various costs and time. Time on the customer's end, costs on the transmission end. So that the, you know, was it gameplay or the videos that Google says are very popular will get to customers without, you know, 400,000 transmissions with transmission costs. There's a physical space where somebody is conducting business, maybe both the ISP and Google, but the relationship between the content supplier, Google, and the customers sounds like Google's business, which then would lead me to the question, why isn't ISP and agent conducting? Right. So we think the physical space is just the space occupied by the equipment. And we don't think that turns it into a place of business. So again, come back to the cable box example. If you have a cable box in your home, that is occupying physical space. It is conducting business in the sense that the cable company is using it to get television into your home. But we don't think every cable box in the United States can be a place of business. And on this point of virtual space versus- But what if the cable box was essentially open to the entire neighborhood making requests to get movies and other things? Then it seems to me it would be a place of business for, I mean, whoever is, you know, responding to the request for the content. I don't think that's necessarily true, Your Honor. And I think that example that you just laid out is very similar to the cell tower example. And the cell tower example- The problem with the cell tower example is, and I do think that this is a hard distinction to make, but I guess that essentially storage incident to transmission, which may be a phrase that you recognize from the Communications Storage Act, is distinguished from remote storage services under the Act. It may not be the most precise distinction in the world, I gather. There's litigation about things being on one side or the other. But it's a kind of common sense distinction, which would put aside the whole class of cases about essentially pure transmission facilities, even if the facilities have hops in them that have truly temporary storage so that, for the usual purposes. But this isn't that, right? This is a warehouse with large capacity, but in a small space because you don't need a lot of space for large capacity. So we don't think this distinction is material for the reason that it just goes to the functioning of the equipment, not whether the equipment is a place of business. Now, you've analogized servers to a warehouse, and there's a certain intuitive appeal to that analogy, but that's just to say that servers function like traditional places of business, not that they are traditional places of business. So if I could return to this virtual point. How much of your point, you know, your refrain kind of depends on the premise that the place, the only possible place here is the equipment, as opposed to the place where the equipment sits. We would concede that a very different case if the equipment sat, again, in a data center, if it were a large facility. It sits somewhere. That's a place, right? Right. Just by virtue of the fact that it occupies physical space and has to sit somewhere, can't convert equipment into a place of business, or every, all of a sudden, any piece of equipment could potentially. Well, it depends what's being done with the equipment at that place. If it's being used to store the wares that the owner of the equipment will supply from that location to those who ask for it, why is that not, why is the place that the equipment sits not a place of business? And following Ohm's Law, or Moore's Law, when in the not too distant future, the entire So taking those in reverse, that wouldn't change our response to the hypo for the reason that this court gave in Big Commerce, which is that this court has been presented over and over again with the argument that modern business realities have changed and that the statute should therefore be interpreted, quote, flexibly. But again and again, it has said you have to adhere to the language of the statute. This is a quote from Big Commerce. We cannot ignore the requirements of the statute merely because different requirements may be more suitable to a more modern business environment. So we think the fact that technology may develop in such a way that equipment grows more and more sophisticated and more and more powerful does not change the fact that fundamentally it is still equipment and not a place of business. Now getting back to this point about whether equipment can function as a place of business. No, no. Whether the place on which the equipment sits can function as a place of business. Right. So there are two responses to that. The first is on the level of law, which is that we don't think a shelf on which a piece of equipment is sitting qualifies as a place within the meaning of CRAE. And that's just a common sense point and a plain language point that an established place of business requires an establishment, requires a building, requires an area set aside. And we don't think a shelf counts. And if a shelf did. Even though the shelf is set aside once selected by Suddenlink or CableOne and Google can say do not move this unless we give you permission. So, Your Honor, we don't quite agree with that on the facts. The ISP receives a computer in the mail and its only obligation is to hang it on a shelf somewhere and notify Google where that happens. So the other obligation that Your Honor is referring to is that the host has to notify Google to the extent it wants to move the equipment. This is on page two of the Suddenlink agreement. And get Google's permission. And Google has to reasonably consider that request. So the only limitation on the equipment is that if the host wants to move it, there's no reason they can't. If you want to move it, just tell Google. They're also servicing the equipment, right? They're doing routine service and maintenance of the equipment because it's sitting there in their ISP. And often that is just a matter of plugging it in and turning it on. And on this point about whether the shelves are Google's place of business, again, I think looking at the language of the service agreement is very helpful. We think as a legal matter, a shelf can't count. But if you look at the language of the service agreement, the equipment is, and this is in paragraph one of the agreement, hosted in the host's facilities. So it's very clear that this is the ISP's facilities, not Google. Paragraph eight on page two of the service agreement says the host is, quote, responsible for physical access to the equipment. And Google's only granted access if the agreement is terminated. And just to give you- What about the opening sentence of Schedule A? The host will provide the following facilities to Google for occupancy and use. Google's occupying that facility. So we think you have to look at the language of what's actually conveyed in the agreement. And all that it is, is that the ISPs will put these servers on rack space. And we don't think that in any meaningful sense converts the place of business into Google's. And if you want a sort of colorful illustration of this, in the seven case, you'll notice there are photographs of ISP facilities and the server rooms in the record. Those were obtained not because Google walked into its own place of business and took photographs. It's because seven served a third party subpoena on these ISPs to gain access to their facilities. Google couldn't get in. It doesn't have physical access. And so we don't- I thought there was something in the agreement that at least indirectly makes clear that Google does have access. I guess it's sort of the negative pregnant of Section 4 of Schedule A that says if there are other Google-like storers using it, that the host has to ensure that the space provided to Google, that access to that space is permitted only to authorized personnel of the host and authorized personnel of Google. And we may not have the keys, but it sounds like- Google doesn't have the keys. Your Honor, I think the best way to understand that provision is Google is just protecting its equipment. Again, Google has equipment in these facilities and it doesn't want folks accessing pieces of its network without knowing who it is. But that's very different than granting Google physical access to the space. And again, if you go through the agreement, we don't think that access is given. And again, there's one point in the agreement where physical access is granted, and that's in paragraph 6 on page 2 of the service agreement. And Google's only granted access there if the agreement is terminated and Google needs to recover its equipment. Can I just double check? You are not this time making the argument that the infringement has to be connected to the regular established place of business. That's correct. That's a separate issue that's not presented here. Okay. All right. Thank you, Mr. Schmidt. We'll give a couple of minutes for rebuttal. Mr. Bragalon? May it please the court. The cash server in isolation. Let's assume that the shelf here is a place. Okay. It's a kind of physical place that you need. And let's assume that based on a reading of the service statute that there is a contemplation that business has to be conducted by persons or agents, employees or agents. Is the maintenance of equipment conducting business within the meaning of the statute? That seems to me not at all clear that that's what's contemplated by conducting business. Yes, if they were employees or agents were selling something, manufacturing something, that would be covered. But is it really contemplated that meaning really maintaining physical property within the jurisdiction is sufficient for conducting business? Well, first of all, the assumption that you would have to have people in the first place in order to have a place. Of course, the statute refers to expensive business or reasonable establishment. But I'm just asking you to, for purposes of this discussion, assume that I read the service statute as contemplating that there would be individuals conducting business, people conducting business within the jurisdiction. That may or may not be correct, but let's just assume that for a moment. Then are they conducting business when they merely service equipment? I think that depends on the facts of the case, perhaps. But I also think that the mere service of equipment and because of that relationship there, that reveals that there really should be no requirement that says that you have to have support personnel. Google actually uses the word support personnel. And I want to be clear, under this agreement, we disagree with the access that Google has to this place. For example, the agreement refers to avoiding... You're getting away from my hypothetical, but there'll be time to explore these other things. But under my hypothetical and my assumptions, is the fact that agents, individual people acting as agents, service equipment, is that conducting business? I would say that to the extent that the court imposes a requirement that there be persons there, that ties from the idea that you would have to have service process, perhaps. That what they're actually doing there, whether they're servicing the equipment, if the equipment is actually doing the business of the defendant and you add a requirement that there be a person there, then I would say yes. But are the individuals who are maintaining the equipment, are they conducting business? So, I would say yes. They may not be themselves conducting business, but they're enabling the business that is conducting. So, in order for a machine to conduct that business, as was noted by my friend, you would have to have personnel available to enable that to happen. I don't remember, Mr. Schmitz, what he said on the bottom line for the laundromat situation, whether that was in or out. But is that kind of what we're talking about here? Somebody, presumably, they're not exchanging money. So, the coin ops are just by machine, but they're there to fix jams or something. Perhaps, yes. So, to the extent that you were to add a requirement that there be staffing, we think that would suffice and that would meet that requirement. But we don't have any case to do on that. In the laundromat providing change, providing time on the machine? Yeah, maybe. But the hypothetical is all they're doing, all the employees, the individuals, or the agents are doing is servicing equipment. Well, if the equipment is actually conducting the business, then servicing becomes pretty important. If the equipment is actually conducting all the business, as Google's does in this case, then keeping that equipment going is a very important part. Your position is that having that server running in the eastern district of Texas is doing business in the eastern district? Yes. Yes. Even though there are no people involved at all? Well, there certainly are people. No, no, no. You've got to assume the premise of the question. Assuming there are no people there doing anything, it's still sufficient in your view. I understand. And thank you for the clarification. Yes, I would say that is doing business. So that server's doing business in the eastern district by providing fast access to the, I take this from the facts, the most requested data. Yes. Okay. Supposing the Texas power grid surges and that box burns out. Okay. But Google, through its computer system, continues to provide the service. Not as fast, but everybody in Texas still gets their whatever is popular video or data or whatever. Is it doing business in the eastern district of Texas or not? I would say so because the test looks at whether you have a place that is a regular and established place of business, but that doesn't mean that that place has to continually conduct the business. So in the example of a service outage, you might have a period of time where that place is not servicing the local customers, but you still have a place that's a regular and established place of business. You look at the... So they've turned off those forward servers in the eastern district of Texas. Are they no longer doing business in the eastern district of Texas? I think that's correct. I believe that is correct, that if there's no servers there and they're not continuing, it's not a temporary outage, I would say absolutely. So what is it your position that Google does in the eastern district? So Google locates its servers there. And first of all, there is a space. No, it doesn't. What does it do? What business is it doing? So Google personnel access the server. In fact, they do it on a weekly basis at least and electronically interact with that server. They image the server. In the agreement, there's an allowance for Google to dispatch field service personnel. And it refers to... I'm actually on page six of seven of the Suddenlink agreement to allow Google to dispatch field service personnel. But the agreement says it could. I gather the only record evidence we have is the affidavit of, was it McCallion or something that says, in fact, we haven't. Or maybe slightly more precisely, I think he said he was not aware that we ever had. That's correct. So that's what their business is. They have the potential to dispatch service personnel to a box. That's their business in the eastern district. I know you're on it. I agree with you. The place of business and the business that's being conducted is the service of ads and video data from that location. And it's actually cached there. So it's stored there. And it's stored there purposefully. Take my hypothetical that I asked your friend. Supposing instead of Google, it's some little the service provider says, I'm going to put five of these on one box. Does that change things? It certainly could. Yes, because if you're analyzing it under all three of the gray factors, here, Google reserved the entire server. It owned the server. And as this court said in ZTE, ownership of the equipment can be an important factor in determining whether a place is a who owns the equipment. Then have they held themselves out? Is it being their location? In this case, Google said, these are Google locations. These edge nodes are locations. Additionally... And just to make clear, it says that basically to the ISPs, the customers don't do... I mean, I guess it's on their websites. Yes, it's a publicly accessible website. Is that part of any kind of... I don't know if this is even the right terminology. Advertising that Google does to customers? I believe so. They're actually telling customers, we are bringing the data to you. And they're touting that as a benefit. Use us because we're faster. Absolutely. We're bringing that data to you. And also, they provide a map. It's an interactive map. And you can actually look on the map and see by dots where those edge servers are located. So they're identifying those as their regular and established places of business. So I do believe that, yes, you would have to look at, did the individual companies say, that's our regular and established place of business? I think that's why the cable box analogy doesn't work. There's no cable company out there in the United States that's saying that the homes of each one of its subscribers... You're running down the VoIP cases is the line. Yes. Yes. They're not saying those are our regular and established places of business and representing that to the public. That would be ridiculous. In contrast, though, it's absolutely the case that machines can and do conduct business under the America Invents Act, Section 18C of that Act. Congress said for purposes of this statute, 1400B, that ATMs could not be a regular and established place of business, but only if... No, that's actually not what... That's right. Only if a CBM is asserted. Exactly. So I think the implication there is that if you're not asserting a covered business method patent, then that can qualify. Well, that might just be a kind of belt and suspenders thing where these sorts of largely unmanned places are uncertain for certain purposes. And therefore, the statute is basically for a particular industry, and therefore, we're going to just make absolutely sure. So I'm not sure how much implication you get out of that. Well, I would characterize it as a carve-out because they're not saying categorically that a machine cannot constitute a regular and established place of business. To the contrary, they're saying it can, but we're going to say that if you're asserting a covered business method patent, that we're going to exempt that. So Congress carved that out. I think we're having a hard time under the cases getting that much from it. I mean, it looks as though Congress was just responding to the banking community's concern that this might happen and doesn't necessarily reflect the judgment by Congress that it would have been within the statute if they hadn't created the exemption. I agree with that, Your Honor, but certainly if it was crystal clear that a machine could never constitute a regular established place of business. The problem, as you know, is that there isn't much that's crystal clear here because we had a multi-decade period where this question didn't arise and the world outside has changed a lot. So what do you do? This is not going to be a very precise question. Overhanging this is a quite legitimate concern that it is not part of our task to adjust a perhaps outmoded notion from the 1897 statute to changes in the real world. And if there are to be adjustments, that's for Congress. Why isn't your position one that effectively requires that kind of adjustment? So I would actually argue it's the opposite. We're trying to stay true to the statute. My friend, Google's counsel, has said that you should impose an additional requirement that virtual business or electronic business cannot be business. That's nowhere in the statute. The statute does not term on the type of business that's conducted. It's flexible and it has endured. I gave your friend a quantum sort of incorporeal hypo. So let me give you the opposite. Supposing that there's a nano-based device which can consist of a swarm of an uncountable number of nano devices, all of which communicate and work together as swarm intelligence covering the entire globe. Where are they? That's certainly a difficult question to analyze under the Cray test. First, I would look to the physical place. Is there a physical place? Everywhere. Like the Scarlet Pimpernel. So there would have to be something that ties it to a physical place, I think. And without knowing that, I couldn't tell you whether or not that there is a place that's a regular and established place of business. But let's assume the place was, in fact, in the Eastern District of Texas, and there was equipment there that enabled this nano cloud to occur. Then you would want to see other factors. Okay, did Google say, this is our nano cloud and we've located our equipment in the Eastern District of Texas? Did they publicly disclose that? So I think you'd want to know other factors, but you could make that determination. It seems like that would not be a place, especially something that's in the air, that's ethereal. It's hard to characterize that as a physical location by its definition. What about transmission lines? Suppose electric transmission lines, telegraph lines in the old days, telephone lines. Would those be a place of business? I think you'd have to know more to analyze it under the Cray factors, but I want to note that in Cray, it said mere... Wait, wait, wait. What's the answer? That's all you've got, is that you've got transmission lines within the state. Is that sufficient? It's hard to see that that's sufficient, but what's the physical place? What's the difference between that and this? The physical place is the structures on which the transmission lines are running. So the difference between your hypothetical and this is that Google specifically located a space. That space has to be actually reported back to Google. I don't understand that distinction. The telephone company put the wires in a deliberate place, presumably to get a short distance or lowest installation and maintenance cost as possible. Those places are not God-given. So if it's just merely communications transmission, Cray says that's not enough. You would have to have more. Even though it's done with physical structure, it's leased. Okay, so what's the difference between that situation and this one? So if you have, you'd have to have the physical structure, and then you would have to have the company. No, no, but what... Well, the difference, you asked me the differences between that case and this case. So here... Why is this, in your view, a regular established place of business and the transmission lines are not? So first of all, we have a space that Google has reserved to itself. I don't understand the difference. And under my hypothetical, the AT&T lines are the electric lines. They're built on structures. They're enormously expensive leases to allow them to put the transmission lines in. That's not a distinction. Well, is it transmitting only AT&T's data? Is it reserved? Yes, yes, yes. It's only the long distance line or the electric lines. We've agreed that those are not regular and established places of business. So I'm asking what's the difference between that and this situation? So I would say that if that situation has all the characteristics that we have identified as being important and critical to this situation, a physical place that is set aside for AT&T and AT&T's use, and if AT&T's regular... You're changing your answer. Transmission lines are a regular and established place of business? Respectfully, I don't think a hypothetical that just says transmission lines gives us enough information to analyze it under the Cray test. AT&T fails to repair one of its telephone poles, and it falls down and boinks somebody, and they file a tort action. And by the way, Google fails to, on its last inspection, tightly secure its server box, and it falls down and boinks one of the repair people. What's the difference? I'm not sure I see a difference there. In each case, if that's that party's equipment, and they've established control over that equipment, and that equipment... And he lies for the purposes of the tort, a different statute, of course. Of course. But assuming if we're talking about the exercise of control and what the ramifications are from that exercise of control, I think at a very high level, it's not materially different. Between... Let's assume that we think that having transmission lines, and they're physically located and based on these structures within the state, does not constitute having a regular and established place of business. Let's just assume that. Is this situation different from that? And if so, how? I would say yes. And the how is that they have physical property there. We're just not talking about a conduit of... In my hypothetical, there's physical property. They're storing data there. It's a data warehouse. They're actually storing large volumes of information locally. They put it there... Transmitting things. I think that's correct. And that distinction has actually been made in server cases by some district courts. Well, that's the voice cases as well. Yes. Well, and CUP said, look, if you're just transmitting data to the cloud, and you don't identify that as your server space, you don't own the equipment, and it's merely a conduit between users and the cloud, they said that's not a regular and established place of business. And so, I think there are differences there. And that's why it's dangerous for this court to establish a one-size-fits-all rule for the same reason that in Rensselaer, you have lockers and the court finds... Do you not agree that providing some clarity in this area would be useful to everybody? I'm not saying that. What I'm saying is it's inappropriate for this court to reach out in a mandamus situation and to say that there's been a usurpation of judicial power, in part because, as this court soundly did, when it looked at this case just a little over a year ago, it said, we're going to wait and see if it percolates. Is this an issue of national importance? I would say absolutely not. This has affected primarily Google, and primarily only in the Eastern District of Texas. Can I ask a procedural question? Is the issue of venue in this case in the district court decided once and for all on this motion to dismiss, or can it be reconsidered? Well, obviously... Assuming we were to deny mandamus. Just as a procedural matter, is this issue over and done or because it was a motion to dismiss? Usually with motions to dismiss, to deny them doesn't end the issue. There can be summary judgment, there can be a trial, but is this one of these motions to dismiss in which essentially this was the opportunity to present facts, the fact findings have been made, an answer has been given, we are not doing venue anymore? I think with a qualification that you can always bring a 12C type motion, and you can ask for judgment on that basis that venue is improper. This can be taken up later, just as it can be so other than that... Because one possibly relevant aspect of the issue that I just raised is whether you have waived an argument that Sunlink and Cable One are agents of Google by perhaps not having asserted that on the motion to dismiss. If the issue on venue was still open in the district court, that could, as a procedural matter, be an available assertion. Yes. First of all, may I say, I think the waiver issue is inappropriate here because for that to be one of the check boxes that we have to check off, there has to be some rule of law that says that you have to show proof people there. You actually have to show agents. Absent that, for us to actually meet the requirement that is yet to be articulated as such in the law, I would say we can't have waived that, but there is sufficient evidence in the record from which the district court found that Google is directing the personnel of the ISP. They have to have step-by-step directions before they touch any of Google's servers, uh, before they tighten the screw. So, I don't believe that issue is waived. I also think that for most purposes, it is now concluded subject to, uh, for example, a Rule 12c type motion. So, I, I don't think it's necessarily the last word, but I do think that we've had the, the venue determination. I will say there was no hearing actually in this instant case. Instead, the court relied upon what the court had previously done in the Seven Networks case. So, there was not an entirely, uh, new hearing. Uh, there was not any discovery, uh, in this case. Instead, we relied upon what it had done before for judicial efficiency. But I, I do think that it would be, to answer the court's procedural question, should this court now impose new appropriate to remand the case back to the district court, to allow the district court, just as this court did in ZTE, to, uh, assess those and to consider those, uh, in light of its venue determination. Because it, it could, in its discretion, transfer the case or it could dismiss or it could also find that, okay, I'm going to consider that and I'm going to find that venue is still appropriate and that there is a regular and established place of business. Okay. Thank you, Mr. Bregolin. Thank you. Mr. Schmidt, you have a couple minutes here. Thank you, Your Honor. I think the colloquy that you had on transmission lines per, transmission lines perfectly exemplifies the problem with the decision below, which is that once you open this door and say equipment can potentially be a regular and established place of business, just about anything can that's used by a business to carry out its business. So this is not just a Google problem. I want to emphasize this. You have to, I asked your friend a question because I wanted to make him do it first, but I want to ask you this. What does Google do in the Eastern District? Do? I don't think Google actively does anything. In other words, there's no evidence of any, um, employee or agent of Google in the declaration that Your Honor was talking about being present in the, in the district. Now there are other employees. I'm sorry. I'm sorry. The declaration is restricted to employees. It doesn't say anything about agency. That's true. You're exactly right about that. Google's had no employee go down there. We think that any agency relationship argument has been waived. But you make money there. Yes. Google's, Google makes money through the trend. Yes. Through its. So what do you do in the Eastern District? I think Google, I mean, I think again, I have an answer in mind, but I want to see. I think, I think you need, you know, you need a less abstract subject to that verb, I think. And what Google does in the district will depend on what the subject of that verb is. I think when you look at the service statute, the subject of that verb has to be employees or agents in the district. And there's no evidence of a Google employee or agency. Is it fair to say you provide information to customers? That is one aspect of Google's business. Of course, we don't think that's its main or it's only, it's only business, but that is one aspect of what Google does. Conducted in the Eastern District when you, until you left. Google users. Yes. Google users receive information through the, through the Google network in the Eastern District of Texas. That is correct. But just because equipment is involved in that transmission does not make a regular and established place of business. And again, I think the transmission line hypothetical perfectly illustrates this. We have the amicus brief that's been submitted of 17 companies in the High Tech Inventors Alliance talking about how this has impacted them. If you look at page 12, note three in that brief, there are tons of suits in the Eastern District of Texas involving equipment-based theories. Google itself, as a result of the seven decision, is now fending off venue motions that are relying on fiber optic cable that Google uses in the district or cell towers that Google uses in the district. So this is a very real problem. And the need for guidance, I think, is very... Were there, were any of the other cases server cases in the amicus brief? I guess that Judge Lynn's case in the Northern District was a server case. I think maybe some tiny unpublished Virginia District Court case was a server case, but otherwise no server cases. Correct. Well, the very first case in that footnote in the amicus brief is a case against Netflix, which does rely on the presence of servers in the district. So this is very much a real problem. And Google is certainly not the only company that has servers in the district. The only distinction that my friend ultimately was able to point to between transmission lines and this piece of equipment is that this piece of equipment stores rather than simply is a pass-through for data. But we don't think that that distinction can possibly be relevant under the statute. This just goes to the functioning of the equipment, not whether or not it is an established place of business. It's hard to see how the storage of data makes something an establishment. Providing information isn't your principal business. What is? Gathering information? I mean, it's obviously an important piece of our business. I'm not up here to represent what Google's main or principal business is. No, but I want to know what they do in the Eastern District. I mean, if your business is gathering information, that's different than providing information, isn't it? Because then you're taking data out of the Eastern District. Your Honor, I don't think this distinction goes to whether or not a place of business, a regular and established place of business exists in the district. And if I can get back to this point about storage. I'm sorry, can I just ask one very specific question? In the McCallion Declaration in A42, he twice says something about Google temporarily caching content. What does temporarily mean there? It's not the same as transmission, even transmission with some incidental servers attached to the routers. It's something longer than that, right? Yeah, well, so I think what that means is a YouTube video that gets cached is not going to be the same YouTube video on every day. In other words, different content on the web becomes more or less popular on a changing basis. And what populates the GGC servers depends on what is popular and what users are requesting. So it's temporarily stored to that extent. So it's temporary in the same sense that a large warehouse of goods would be temporary because goods change. So that word is not really doing anything except to suggest this is a little bit like transmission, which doesn't sound quite right. I think that's right in a metaphorical sense, Your Honor. But I want to get back to this point about virtual versus real business. So an e-retailer sells goods through the internet. If I access the e-retailer's website on my home, I am looking at a computer. It is a physical thing. And it seems a lot like a place of business. It's a virtual storefront. But that does not mean that the e-retailer has a place of business in my home because it's just a virtual place of business. And we think the exact same analysis would apply to a server. Metaphorically, in certain ways, it stores data that seems, again, metaphorically, like it is a warehouse. But it's just a virtual warehouse. And we know from Cray— Except that it's full of terabytes of actual content. But again, we know from Cray that a virtual space is not enough, right? So any virtual space is going to be instantiated in circuitry. Just like in the e-retailer example, in my home, that store is going to be instantiated in the circuitry of my computer. So the fact that a virtual place has some physical component or manifestation— That's not right. A store of stuff is somewhere else at some server farm. It's only something that we might call an index that tells you what you have available to you. The content is not— Otherwise, it would take forever to download even the front page. But I don't take my friend to be saying that a computer cannot be a physical place of business for purposes of the venue statute. I'm not sure on what basis, on their theory of venue, you would say that the computer in a user's home is not a physical place. Because after all, it is a physical box that carries out the business of the defendant, which is selling goods through the internet to customers. And it occupies physical space. So yes, you're right. The goods are somewhere else. But it is still a physical object. And the store is instantiated in the circuitry of a computer in a physical way in the person's home. But that is just a virtual place of business. And we think that's plainly insufficient under Cray. Are there any other questions? Yeah, I want to finish up on my line of questioning. And that is, when you gather information from customers, which is part of your business, you agree, how does that get passed back to Google? It goes through the server? I'm not aware. There's nothing in the record that I'm aware of on that point, Your Honor. Okay. All right. Thank you, Mr. Schmidt. Thank you, Mr. Bernal. Case is submitted. That concludes our session for this morning.